UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,                        CRIMINAL NO. 06-cr-20465

v.                                     HON. NANCY G. EDMUNDS

RONALD HATMAKER,

                    Defendant.

---

**GOVERNMENT'S RESPONSE OPPOSING DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE
UNDER SECTION 3582(c)(1)(A)**

---

Defendant Ronald Hatmaker, a former Detroit Chapter President of a violent outlaw Motorcycle gang, the Detroit Highwaymen Motorcycle Club, was convicted after a guilty plea to being part of a RICO enterprise. He received a well-deserved sentence of 170 months (reduced from an original 188 months) imprisonment, based upon his

overall conduct and the conduct of the co-conspirators he knowingly joined with, and whose activities he directed.

Hatmaker began serving his current sentence on September 27, 2012. He now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). He cites various medical conditions in support of his motion, including "heart trouble," hypertension, and "heart disease." His motion should be denied.

Hatmaker does not satisfy the statutory requirements for compassionate release. For starters, because he has not met the mandatory exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A), the Court is barred from addressing his argument on the merits. *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020). Hatmaker also does not satisfy the substantive requirements. "[T]he mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The government agrees that Hatmaker's increased risk of severe complications from Covid-19 based on his heart disease qualifies as "extraordinary and compelling reasons" for release. But the § 3553(a) factors—which the Court must

2

also consider under § 3582(c)(1)(A)—do not support release because he is dangerous and has a long remaining sentence to serve.

The Bureau of Prisons has also taken significant steps to protect all inmates, including Hatmaker from Covid-19. Since January 2020, the Bureau of Prisons has implemented "a phased approach nationwide," implementing an increasingly strict protocol to minimize the virus's spread in its facilities. *Wilson v. Williams*, 961 F.3d 829, 833–34 (6th Cir. 2020). The Bureau of Prisons has also received 75,395 doses of the Covid-19 vaccine as of 03/10/2021 and is distributing the vaccine to its staff and inmates as quickly as it is received by each institution. *See* CDC Covid-19 Vaccine Tracker and BOP COVID-19 Vaccination Implementation. The Bureau of Prisons also continues to assess its entire population to determine which inmates face the most risk from Covid-19, pose the least danger to public safety, and can safely be granted home confinement.  And the Bureau of Prisons has assessed its entire population to determine which inmates face the most risk from Covid-19, pose the least danger to public safety, and can safely be granted home confinement.   Especially given the Bureau of Prisons' efforts—and "the legitimate concerns about public safety" from

releasing inmates who might "return to their criminal activities,"

*Wilson*, 961 F.3d at 845—the Court should deny Hatmaker's motion for

compassionate release.

## Background

Hatmaker, a former Detroit Chapter President of the notorious

Highwaymen Motorcycle Gang pleaded guilty to Ct.2, 18 U.S.C. §

1962(d) – RICO Conspiracy.

Having found Hatmaker guilty of Count Two, at sentencing, the

Court held him responsible for various racketeering acts committed by

members of the RICO enterprise:

> Act 02 – Conspiracy to Murder Gerald Deese
> Act 03 – Extortion of Anthony Barton
> Act 04 – Armed Robbery of Steve Peet
> Act 09 – Conspiracy to Distribute Cocaine
> Act 11 – Conspiracy to Distribute Controlled Substances
> Act 12 – Conspiracy to Commit Murder of Doug Burnett

With an advisory Guideline Range of 244 months imprisonment,

the Court sentenced Hatmaker to188 months (later reduced to 170

months) in prison.

Hatmaker began serving his prison sentence on September 27,

2012 and is currently incarcerated at Federal Correctional Institution

(FCI) Hazelton. He is 62 years old, and his projected release date is

12/10/2024. Hatmaker has moved for compassionate release, citing his medical conditions, Heart Disease (unstable angina and aortic stenosis) and hypertension, and the Covid-19 pandemic. According to BOP records, Hatmaker first requested compassionate release from the warden on March 9, 2021. He therefore had not exhausted his administrative remedies when he filed his motion in January 2021.

## Argument

## I.   The Bureau of Prisons has responded to Covid-19 by protecting inmates and increasing home confinement.

### A.   The Bureau of Prisons' precautions have mitigated the risk from Covid-19 within its facilities.

The Bureau of Prisons has reacted quickly to confront Covid-19's spread within its facilities. *Wilson v. Williams*, 961 F.3d 829, 833–34 (6th Cir. 2020). For over almost a decade, the Bureau of Prisons has maintained a detailed protocol for responding to a pandemic. Contrary to Hatmaker's arguments (ECF No. 3061, Motion, PageID.23215), and consistent with its protocol, the Bureau of Prisons began planning for Covid-19 in January 2020, and has repeatedly revised its plan. *Wilson*, 961 F.3d at 833–34. By this point, the Court is aware of the Bureau of Prisons' efforts. BOP Covid-19 Modified Operations Website.

Like all other institutions, penal and otherwise, the Bureau of Prisons has not been able to eliminate the risks from Covid-19 completely, despite its best efforts. But the Bureau of Prisons' measures will help federal inmates remain protected from Covid-19 and ensure that they receive any required medical care during these difficult times.

**B.    The Bureau of Prisons is increasing the number of inmates who are granted home confinement.**

The Bureau of Prisons has also responded to Covid-19 by increasing the placement of federal prisoners in home confinement. Legislation temporarily permits the Bureau of Prisons to "lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement" during the Covid-19 pandemic. CARES Act § 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281, 516 (Mar. 27, 2020). The Attorney General has also issued two directives, ordering the Bureau of Prisons to use the "various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing Covid-19 pandemic." (03-26-2020 Directive to BOP, at 1; *accord* 04-03-2020 Directive to BOP, at 1). The directives require the Bureau of Prisons to identify the inmates most at risk from Covid-19 and "to consider the totality of circumstances for each individual inmate" in

deciding whether home confinement is appropriate. (03-26-2020 Directive to BOP, at 1).

The Bureau of Prisons' efforts on this point are not hypothetical. Currently, the Bureau of Prisons has 7,517 inmates on home confinement, and the total number of inmates placed in home confinement from March 26, 2020 to the present (including inmates who have completed service of their sentence) is 22,539 BOP Coronavirus FAQs. As the Sixth Circuit stressed, these efforts show that "[t]he system is working as it should": "A policy problem appeared, and policy solutions emerged." *United States v. Alam*, 960 F.3d 831, 836 (6th Cir. 2020).

This policy solution is also tailored to the realities of the Covid-19 pandemic. The Bureau of Prisons, after all, cannot open its facilities' gates indiscriminately and unleash tens of thousands of convicted criminals, en masse. *See id.* It must focus on the inmates who have the highest risk factors for Covid-19 and are least likely to engage in new criminal activity. This is true not just to protect the public generally, but to avoid the risk that a released defendant will bring Covid-19 back into the jail or prison system if he violates his terms of release or is

7

caught committing a new crime. *See* 18 U.S.C. § 3624(g)(5); 34 U.S.C. § 60541(g)(2).

The Bureau of Prisons must also balance another important consideration: how likely is an inmate to abide by the CDC's social-distancing protocols or other Covid-19-based restrictions on release? Many inmates—particularly those who have been convicted of serious offenses or have a lengthy criminal record—been already proven unwilling to abide by society's most basic norms. It is thus important to evaluate "how . . . released inmates would look after themselves," *Wilson*, 961 F.3d at 845, including whether a particular inmate would adhere to release conditions and social-distancing protocols during the pandemic. If a prisoner would be unlikely to take release conditions or Covid-19 precautions seriously, for instance, he would also be far more likely than the general public to contract and spread Covid-19 if released.

Finally, the Bureau of Prisons' home-confinement initiative allows it to marshal and prioritize its limited resources for the inmates and circumstances that are most urgent. For any inmate who is a candidate for home confinement, the Bureau of Prisons must first ensure that his

proposed home-confinement location is suitable for release, does not place him at an even greater risk of contracting Covid-19, and does not place members of the public at risk from him. It must assess components of the release plan, including whether the inmate will have access to health care and other resources. It must consider myriad other factors, including the limited availability of transportation right now and the probation department's reduced ability to supervise inmates who have been released. All of those decisions require channeling resources to the inmates who are the best candidates for release.

Those types of system-wide resource-allocation decisions are difficult even in normal circumstances. That is why Congress tasked the Bureau of Prisons to make them and has not subjected the decisions to judicial review. 18 U.S.C. § 3621(b) ("Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."); *United States v. Patino*, 452 F.Supp.3d 705, 712 (E.D. Mich. 2020) ("[A]s a general rule, the Court lacks authority to direct the operations of the Bureau of Prisons."). It is especially true now, given the Bureau of Prisons' substantial and ongoing efforts to address the Covid-19 pandemic.

9

**C.    The Bureau of Prisons is receiving the Covid-19 vaccine and is in the process of administrating the vaccine in its facilities.**

As of 03/10/2021, the Bureau of Prisons has acquired 75,395 doses of the Covid-19 vaccine and is distributing it to staff and inmates. *See* CDC Covid-19 Vaccine Tracker and BOP COVID-19 Vaccination Implementation. The Bureau of Prisons has already initiated the first dose of the vaccine in 321 of staff members and 327 inmates at Hazelton FCI. *See* CDC Covid-19 Vaccine Tracker and BOP COVID-19 Vaccination Implementation. While the precise timing of each inmate's vaccination will depend on many factors, the Bureau of Prisons is working swiftly to vaccinate inmates who consent to receive the vaccine.

## II.    The Court should deny Hatmaker's motion for compassionate release.

Hatmaker's motion for a reduced sentence should be denied. A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has

been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow.

*First*, compassionate release requires exhaustion. 18 U.S.C. § 3582(c)(1)(A); *Alam*, 960 F.3d at 832. This statutory exhaustion requirement is mandatory. *Alam*, 960 F.3d at 832–36.

*Second*, even if a defendant exhausts, he must show "extraordinary and compelling reasons" for release. 18 U.S.C. § 3582(c)(1)(A).

*Third*, even if a defendant is eligible for compassionate release, a district court may not grant the motion unless the factors in 18 U.S.C. § 3553(a) support release. 18 U.S.C. § 3582(c)(1)(A); *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020). As at sentencing, those factors require the district court to consider the defendant's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment for the offense, general and specific deterrence, and the protection of the public. 18 U.S.C. § 3553(a).

## A.   Binding authority prohibits the Court from granting release, because Hatmaker has not satisfied the statutory exhaustion requirement.

The Court should dismiss Hatmaker's motion because he has not satisfied the exhaustion requirement for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Until recently, only the Bureau of Prisons could move for compassionate release. The First Step Act of 2018 amended the statute, permitting defendants to move for it too. First Step Act § 603(b), Pub. L. No. 115-319, 132 Stat. 5194, 5239 (Dec. 21, 2018).

But the provision permitting a defendant-initiated motion includes an exhaustion requirement. *Id.* A district court may not grant a defendant's motion for compassionate release unless the defendant files it "after" the earlier of (1) the defendant "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A); *Alam*, 960 F.3d at 832. This statutory exhaustion requirement is "a mandatory condition" that "must be enforced" when the government raises it. *Id.* at 832–36; *accord*

*United States v. Raia*, 954 F.3d 594, 595–97 (3d Cir. 2020). Hatmaker has not satisfied the exhaustion requirement because he filed his motion less than 30 days after he made a request to the warden under § 3582(c)(1)(A). In fact,  BOP records show that Hatmaker never made a request for compassionate release before he filed his motion, and instead only recently, on March 9, 2021, made a request for compassionate release. (See Exhibit C.)  No decision has yet been made on that request.

## B.    Hatmaker has shown "extraordinary" and"compelling" reasons for compassionate release.

Even if Hatmaker had exhausted, he is not eligible for release.

Resolving the merits of a compassionate-release motion involves a "three-step inquiry": a district court must (1) "find that extraordinary and compelling reasons warrant a sentence reduction," (2) "ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *Elias*, ___ F.3d ___, No. 20-3654, 2021 WL 50169, at *2 (6th Cir. Jan. 6, 2021); 18 U.S.C. § 3582(c)(1)(A). In *Elias*, 2021 WL 50169, at *2, the Sixth Circuit held that USSG § 1B1.13 is not an "applicable" policy statement for

13

defendant-initiated motions for compassionate release. The government

disagrees with that holding and preserves for further review its

argument that § 1B1.13 remains binding. But, given the Sixth Circuit's

holding in *Elias*, controlling circuit precedent now forecloses that

argument before this Court.

The government agrees that Hatmaker's circumstances qualify as

"extraordinary and compelling reasons." His medical records establish

that he has Heart Disease (unstable angina and aortic stenosis) which

the CDC has confirmed is a risk factor that places a person at increased

risk of severe illness from Covid-19. *See* Exhibits A and B (filed under

seal); CDC Risk Factors (as updated). Given the heightened risk that

Covid-19 poses to someone with that medical condition, Hatmaker has

satisfied the initial eligibility criteria for release under § 3582(c)(1)(A).

### C.   **The factors in 18 U.S.C. § 3553(a) strongly weigh against compassionate release.**

Even when an inmate has shown "extraordinary and compelling

reasons," he is still not entitled to compassionate release. Before

ordering relief, the Court must consider the factors set forth in 18

U.S.C. § 3553(a) and determine that release is appropriate. 18 U.S.C.

§ 3582(c)(1)(A). A defendant's failure to establish that the § 3553(a)

factors support relief is an independent basis for denying compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020); *accord United States v. Austin*, 825 F. App'x 324, 325–27 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors); *United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (same).

This Court's "initial balancing of the § 3553(a) factors during [the defendant's] sentencing" is presumed to "remain[] an accurate assessment as to whether those factors justify a sentence reduction". *United States v. Sherwood*, 2021 WL ____, at * ____(6th Cir. Feb. 2, 2021). The defendant must therefore "make a compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today." *Id.* Here, even if the Court were to find that Hatmaker established extraordinary and compelling reasons for his release, the § 3553(a) factors should still disqualify him.

For starters, Hatmaker's remaining sentence weighs heavily against release. The Sixth Circuit has repeatedly upheld the denial of compassionate release under § 3553(a) when a defendant has a long remaining sentence, including in a recent published decision. *Ruffin*,

15

978 F.3d at 1008; *accord Kincaid*, 802 F. App'x at 188–89; *Austin*, 825 F. App'x at 326; *see also United States v. Kincaid*, 805 F. App'x 394, 395–96 (6th Cir. 2020) ("[W]e don't think [the defendant] raises a close question."). This is because the original sentence already reflects the district court's evaluation of "the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law" under § 3553(a). *Kincaid*, 802 F. App'x at 188; *accord Ruffin*, 978 F.3d at 1008.

Considering his remaining sentence—another approximately 3 years—and the fact that he has never accepted responsibility for most of the racketeering acts the Court held him accountable for, Hatmaker is particularly unsuited for what would be a fairly sizable sentence reduction.

The plain language of the compassionate-release statute makes the point even more directly: it requires that the defendant's reasons for release "warrant such a reduction" in his sentence. 18 U.S.C. § 3582(c)(1)(A)(i). That inquiry depends, at least in part, on the length of time remaining on the defendant's sentence, requiring him to justify the magnitude of his requested sentence reduction. *Id.* So a defendant

with many years left on his sentence, like Hatmaker, must show that his reasons for release are so powerful that they "warrant" a "reduction" of that size. *Id.*

In terms of the seriousness of the offense, Hatmaker was convicted of being part of a criminal RICO enterprise, the Detroit Highwaymen outlaw motorcycle gang – an extremely dangerous group that was involved in murder, extortion, arson and drug trafficking, and was often in hostile territorial conflict with other outlaw motorcycle gangs. According to one interceptee of electronic surveillance: "I'll tell you of all the motherfuckers in the club, that's the last man I would ever want mad at me is fucking Ronnie Hatmaker." He goes on to say: "You better do it because Ronnie will hunt you to the fucking four corners of the earth." (R 1678. Government Supplemental Sentencing Memorandum p.3).

The original 188 month sentence the Court imposed satisfied the need to promote respect for the law and provide just punishment for the offenses and protection of the public from further crimes and violence from this defendant. After all, the Highwaymen terrorized Southwest Detroit and the surrounding community for years. Hatmaker, as a

national leader in the organization, was very much part of that culture and, in fact, directed those activities. Moreover, although Hatmaker's original sentencing guidelines called for a 240 month sentence, the Court imposed a below-guideline sentence of 188 months(later reduced to 170 months). To date, he has served only approximately 59.6% of the 170 month sentence, and therefore reducing his sentence and releasing him now would seriously undermine several important goals served by the § 3553 sentencing factors.

In particular, this Court appropriately considered the need for its sentence to promote respect for the law, provide just punishment, deter criminal conduct, and protect the public when it sentenced Hatmaker. Granting the extraordinary relief requested here and reducing his sentence by such a significant amount would seriously undermine those sentencing goals. *See, e.g., United States v. Knight*, No. 15-20283, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020) ("Allowing [defendant] to be released after only serving about a third of his sentence would not promote respect for the law or proper deterrence, provide just punishment, and avoid unwarranted sentencing disparities."); *United States v. Dupree Rich*, No. 17-CR-20032, ECF No. 56 (E.D. Mich. Sept.

9, 2020) (denying compassionate release, after government had

conceded "extraordinary and compelling reason," where defendant had a

lengthy criminal history and bond violations, and had served *less than*

*half* of his 100-month sentence for possession with intent to distribute

cocaine).

Hatmaker's record casts significant doubt on whether he would

abide by the release conditions and social-distancing protocols that

could diminish his risk of contracting Covid-19 if released from custody.

Although the *average* person might have a higher risk of contracting or

developing complications from Covid-19 in prison than if released, an

*individual* defendant's risk varies widely. It depends on a long list of

variables, including the precautions at his prison, the number of Covid-

19 cases there, the prison's medical facilities, his access to medical care

if released, and the threat from Covid-19 at his release location. A

defendant's risk of contracting Covid-19 also depends not just on his

opportunities for social-distancing, but on his willingness to take

advantage of those opportunities and engage in social-distancing for the

pandemic's duration. Hatmaker, however, is unlikely to abide by

release restrictions and is thus more likely than most people to expose

himself and innocent people to Covid-19. Contrary to his suggestion that he would abide by all conditions of release, while in prison on 4/25/2018, Hatmaker was disciplined for possession of a weapon that was attached to the underside of his bunk with a magnet.  His in-prison conduct does not seem that much different than the outlaw biker lifestyle he enjoyed before his incarceration.  (See Exhibit D.)

The § 3553(a) factors weigh against granting Hatmaker's motion.


## IV.    Conclusion

Hatmaker's motion should be denied.

Respectfully submitted,

SAIMA S. MOHSIN
Acting United States Attorney


*s/ Eric M. Straus*
Eric M. Straus   P38266
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9648
Eric.Straus@usdoj.gov

Dated: March 16, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 16, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send a notice of such filing to all counsel of record. In accordance with the government's protocol during the Covid-19 pandemic, a copy of the foregoing will either be mailed to an attorney for the BOP for delivery to petitioner, or mailed (on the next allowed admittance to the government's office to conduct outbound mailings) to the petitioner at the following:

Ronald Hatmaker
REG: 43499-039
Hazelton U.S. Penitentiary
Inmate mail/parcels
PO BOX 5000
Bruceton Mills, WV 26525

*s/ Eric M. Straus*
Eric M. Straus    P38266
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9648
Eric.Straus@usdoj.gov